**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

VINSON JOHNSON,

      Plaintiff,

        v.

JEWEL FOOD STORES, Inc.,

      Defendant.

No. 10 C 8229
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

Plaintiff Vinson Johnson filed this action against Defendant Jewel Food Stores, Inc., an Ohio corporation and Mr. Johnson's former employer. Mr. Johnson, an African-American, alleges that his employment was terminated because of his race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* Defendant now moves for summary judgment. For the following reasons, Defendant's motion is granted.

## BACKGROUND

Mr. Johnson began working for Jewel Food Stores, Inc. ("Jewel") in 1996. He was employed in the company's Melrose Park Distribution Center. In the two years between June 2005 and June 2007, Mr. Johnson was absent from work for periods in excess of four days without prior approval on at least five occasions. Each of these absences appears to have been for medical reasons.

Jewel exercises a somewhat confounding policy regarding employees' health-related absences from work, various components of which are set forth in at least three different documents: (1) the Collective Bargaining Agreement ("CBA") between Jewel and its hourly

1

employees at the Distribution Center, who are represented by the International Brotherhood of Teamsters, Local 710; (2) the Melrose Park Distribution Center Policy and Procedure Manual ("Manual"); and (3) a policy notice posted on bulletin boards in the Distribution Center and set forth in letters mailed to absent employees that requires those employees who are absent for medical reasons without prior approval for more than three days to submit absence reports in each of the first two weeks of their absence, and a "report of attending physician" every three weeks until the employee returns to work ("Report Policy").

According to section 8.4(e) of the CBA, "[a]n employee shall be considered as quitting who is absent from work without approval for four (4) consecutive calendar days in a scheduled workweek." Nevertheless, as described above, the Report Policy permits an employee to save him or herself from this constructive resignation by filing periodic absence reports and physician reports until the employee returns to work, even if the absence began without prior approval. The procedure for addressing health-related absences as set forth in the Manual, however, is somewhat inconsistent with this policy. The Manual contemplates employees submitting physician reports only upon returning from a health-related absence. Appendix B of the CBA, which addresses employee attendance, also refers to the submission of physician reports only upon returning to work.

Consistent with the policy as expressed in the Manual, following each of his first four extended absences, Mr. Johnson presented a physician's report explaining his absence only upon returning to work. During each absence, however, Mr. Johnson received a letter from Jewel reiterating the Report Policy and setting forth a deadline by which his absence reports and physician reports were due. Should Mr. Johnson fail to meet this deadline, the letters warned,

his employment with Jewel would be terminated.  In each case, Mr. Johnson failed to comply with the Report Policy in advance of the deadline, returned to work shortly after the deadline, presented his physician's report, and resumed his employment without issue.  Mr. Johnson avoided termination on each occasion, Jewel explains, because he returned to work within a several-day window that apparently exists between the expiration of the deadline set forth in the warning letter and his supervisors' arrival at a formal decision to terminate his employment.

It appears as though Mr. Johnson concluded that the warning letters referencing the Report Policy were not to be taken seriously.  The Manual does suggest that absences may be resolved by presenting a physician's report upon one's return to work, and on four occasions Mr. Johnson appears to have ignored letters warning to the contrary without consequence. Nevertheless, it is clear that Mr. Johnson ultimately miscalculated.  Mr. Johnson began his most recent extended absence on June 10, 2007.  On July 20, Jewel sent Mr. Johnson a letter similar to those it had sent in connection with his previous absences asking Mr. Johnson to comply with the Report Policy and warning that if he did not file the report forms by July 26, his employment would be terminated.[1]  As of July 31, Mr. Johnson still had not responded, and Jewel decided to terminate his employment.  On August 4, Mr. Johnson attempted to return to work and, upon his arrival, was informed that he no longer was employed by Jewel.

On December 28, 2010, Mr. Johnson filed this suit alleging racial discrimination under Title VII of the Civil Rights Act.  Mr. Johnson claims that he was not in violation of Jewel's

---

[1] This letter, like the four similar letters sent in connection with Mr. Johnson's previous absences, was sent by certified mail to the address Mr. Johnson had submitted to Jewel as his home address.  The address Mr. Johnson submitted, however, was his mother's address, and Mr. Johnson did not in fact reside there.  Consequently, although Mr. Johnson acknowledges having eventually received the letters sent in connection with his previous absences, he asserts that he did not see the last warning letter until he visited his mother's house after learning he had been terminated.

employee attendance policy, that white employees were not terminated under similar circumstances, and that he was terminated because he is African-American.

## DISCUSSION

I.  Legal Standards

    A.  Standard of Review

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).  A genuine issue of triable fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Pugh v. City of Attica, Ind.,* 259 F.3d 619, 625 (7th Cir. 2001).

Once the moving party has set forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue for trial.  Fed.R.Civ.P. 56(e); *see Celotex Corp. v. Catrett, 477 U.S. 317, 323–24 (1986).*  The nonmoving party must offer more than "[c]onclusory allegations, unsupported by specific facts" in order to establish a genuine issue of material fact. *Payne v. Pauley,* 337 F.3d 767, 773 (7th Cir. 2003) (citing *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888 (1990)).  A party will be successful in opposing summary judgment only if it presents "definite, competent evidence to rebut the motion."  *EEOC v. Sears, Roebuck & Co., 233 F.3d 432, 437 (7th Cir. 2000).*  I consider the record in the light most favorable to the non-moving party, and draw all reasonable inferences in the non-movant's favor.  *Lesch v. Crown Cork & Seal Co.,* 282 F.3d 467, 471 (7th Cir. 2002).  I will accept the non-moving party's

version of any disputed fact only if it is supported by relevant, admissible evidence. *Bombard v. Fort Wayne Newspapers, Inc.,* 92 F.3d 560, 562 (7th Cir. 1996).

B.  Title VII

"A plaintiff alleging race discrimination under Title VII of the Civil Rights Act can prove such discrimination either by providing direct evidence of an employer's discriminatory intent or by showing disparate treatment using indirect evidence and the burden-shifting method established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973)." *Alexander v. Wis. Dep't of Health & Family Servs.,* 263 F.3d 673, 682 (7th Cir. 2001).  Under the *McDonnell Douglas* approach, a plaintiff can establish a case of racial discrimination by showing that: "(1) he is a member of a protected class; (2) at the time of his discharge, he was meeting his employer's legitimate expectations; (3) he was discharged; and (4) his employer treated similarly situated individuals outside of the protected class more favorably." *Peters v. Renaissance Hotel Operating Co.,* 307 F.3d 535, 545 (7th Cir. 2002); *Herron v. DaimlerChrysler Corp.,* 388 F.3d 293, 299 (7th Cir. 2004).  If the plaintiff successfully meets this burden, the burden of production then shifts to the defendants "to articulate a legitimate nondiscriminatory reason for [their] action." *Peters,* 307 F.3d at 545.  Assuming the defendants meet this burden, the burden then shifts back to the plaintiff to show that the reason put forth by the defendants is a pretext for racial discrimination. *Id.*

II.  Application

Here, Mr. Johnson has neither directly proven discrimination, nor satisfied the *McDonnell Douglas* test.  Mr. Johnson has offered no direct evidence of discriminatory intent on the part of his employer.  While Mr. Johnson clearly satisfies prongs (1) and (3) of *McDonnell Douglas*, it is not at all clear that his failure to comply with the Report Policy was not contrary to

his employer's legitimate expectations.[2]  Perhaps more importantly, Mr. Johnson has not shown that similarly situated employees outside of his protected class were treated more favorably.

Mr. Johnson asserts that four Caucasian Jewel employees – Brian Earls, Chris Thompson, Jerry Fialkowski, and Larry Riske – were engaged in conduct similar to Mr. Johnson and were not discharged.  The uncontested factual record, however, suggests that this assertion is wholly without merit.  It appears that Mr. Earls, who received a warning letter in connection with an unapproved extended absence beginning in August 2003, returned to work in advance of the deadline set forth in the letter.  This is in contrast to Mr. Johnson, who returned to work nine days after the deadline set forth in his warning letter had expired.

Mr. Thompson received a warning letter on May 7, 2002 regarding an unapproved absence, but submitted the requested physician's report the same day.  Eight years later, Mr. Thompson received a warning letter regarding another unapproved absence.  This time Mr. Thompson did not respond prior to the deadline given in the letter, and his employment was duly terminated.

Mr. Johnson asserts that Messrs. Fialkowski and Riske had accumulated 33 and 36 "attendance points" respectively by the end of 2002.  Although the current CBA states that an attendance point total of 31 is sufficient grounds for termination, both employees kept their jobs.  A closer look at the CBA, however, reveals that the point system was recalibrated in August, 2003.  In 2002, when Messrs. Fialkowski and Riske had accumulated their respective point totals, the point total prompting termination was 42.

---

2 Although Mr. Johnson does not make the argument, courts have recognized that in some cases the "legitimate expectations" inquiry dovetails with the "pretext" question.  *See Gates v. Caterpillar, Inc.*, 513 F.3d 680, 691 n. 8 (7th Cir. 2008); *Elkhatib v. Dunkin Donuts, Inc.*, 493 F.3d 827, 831 (7th Cir. 2007); *Curry v. Menard*, 270 F.3d 473, 477-78 (7th Cir.2001).  Presumably, Mr. Johnson would argue that Jewel's asserted expectation that he comply with the Report Policy was not legitimate, but rather pretext for discriminating against him based on his race.

Further, even if Mr. Johnson were found to have satisfied *McDonnell Douglas*'s initial four-prong test, Jewel has articulated a legitimate non-discriminatory justification for their action, and Mr. Johnson has not shown that this justification is pretextual. Mr. Johnson defiantly asserts that he "did not violate the company's attendance policy as expressed in the [CBA and Manual]." Jewel responds that Mr. Johnson is simply talking past their justification for terminating his employment, which was not a failure to comply with the attendance policy, but rather his failure to comply with the Report Policy – a policy that is, at least in Jewel's view, discrete from the attendance policy articulated in Appendix B of the CBA.

Unfortunately for Mr. Johnson, inconsistencies that may or may not exist between Jewel's attendance policy as articulated in Appendix B of the CBA, the Report Policy, and the Manual, without more, are not material to the action he has brought before the Court. For what it is worth, the language in Section 8.4 of the CBA that, in Mr. Johnson's view, holds that employees may resolve an unapproved health-related absence by presenting a physician's report upon returning to work, seems to refer only to employees who have been recalled from "layoff status," but whose return is delayed for medical reasons. Ultimately, however, parsing through Mr. Johnson's understanding of the relevant policy as compared to Jewel's implementation of the policy is merely "distraction" from the determinative issue. *See Ransom v. CSC Consulting, Inc.*, 217 F.3d 467, 471 (7th Cir. 2000); *Green v. National Steel Corp., Midwest Div.*, 197 F.3d 894, 900 (7th Cir. 1999); *Kariotis v. Navistar Intern. Transp. Corp.*, 131 F.3d 672, 677 (7th Cir. 1997). It is not for me to concern myself with whether an employer has been too hard on an employee or has adopted too strict an interpretation of a given policy. "[T]he question is not whether the employer's reasons for a decision are *right*, but whether the employer's description

of its reasons is *honest*."  *Kariotis*, 131 F.3d at 677 (emphasis in original).  That is, the only question is whether Jewel's proffered reason for terminating Mr. Johnson was pretext for discriminating against him on the basis of his race.  *See Gates v. Caterpillar, Inc.*, 513 F3d 680, 691 (7th Cir. 2008); *Ineichen v.* Ameritech, 410 F.3d 956, 961 (7th Cir. 2005).

The uncontested evidence suggests that Jewel implemented the relevant policy consistently across racial lines, and that the reasons Jewel has given for deciding to terminate Mr. Johnson's employment are offered in good faith.  To be sure, Jewel might have granted Mr. Johnson some leniency given the circumstances.  But there is no evidence to suggest that the decision not to do so was based upon his race, and a court's inquiry into the matter must stop there.  Absent evidence that Jewel's stated reason for terminating Mr. Johnson's employment was a fabrication, "summary judgment is wholly appropriate."  *See Gates*, 513 F.3d at 691.

## CONLUSION

For the foregoing reasons, Defendant's motion for summary judgment is granted.

ENTER:

James B. Zagel
United States District Judge

DATE: October 18, 2012